PEOPLE, PLAINTIFF AND APPELLEE, v. ARRIETA, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Arecibo in a Prosecution for Violation of the Automobiles Act.

No. 1467.—Decided April 16, 1920.

EVIDENCE—SUPPRESSION OF EVIDENCE.—Failure to produce a witness whose testimony is for any reason comparatively unimportant, or cumulative, or inferior to that of other witnesses who have testified at the trial, does not amount to a wilful suppression of evidence or justify the inference that if the absent witness had testified his testimony would have been adverse.

The facts are stated in the opinion.

Messrs. *M. Guerra* and *I. Soldevila* for the appellant.

Mr. *J. E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Ramón Arrieta was convicted of a violation of section 12, subdivision "D", of "An Act to regulate the operation of motor vehicles in Porto Rico, and for other purposes," approved April 13, 1916.

The section referred to provides:

"(a) That persons operating motor vehicles on the public highway shall at all times exercise due care and take every reasonable precaution to insure the safety of persons and property.

"(d) Motor vehicles while being operated on the public highways shall be kept as far to the right as practicable and shall observe this precaution particularly, while rounding a curve, and always give warning with signaling device, while rounding a curve."

Section 18 of the same law makes a violation of its provisions a misdemeanor, punishable by fine or imprisonment.

The information recites that in March, 1919, at kilometer 113, between hectometers 9 and 10 of the road leading from Quebradillas to Isabela, defendant Ramón Arrieta wilfully, unlawfully and negligently, while driving an automobile around a curve known as "Bajada de Guajataca" kept to his left and failed to sound his horn or other instrument of warning, thus causing a collision with another automobile conducted by Luis Fernández at the said spot.

Appellant insists that the court below erred in weighing the evidence and in not giving the accused the benefit of the presumption that the testimony of a policeman who arrived on the scene shortly after the collision occurred, had it been adduced by the prosecuting attorney, would have been adverse.

Luis Fernández, the chauffeur mentioned in the information, testified that he was going down grade on a curve, on the inside thereof, which was to his right, next to the mountain, when he met a Studebaker machine driven by the defendant, which collided with the car driven by witness; that he knew the other automobile was coming when it was already upon him, as the defendant did not blow his horn nor

give any warning; that the bumper and the left mud-guard of the automobile driven by witness were broken and that the bumper (identified by witness) was bent by the wheel of the defendant's car; that witness was driving a Dodge car which had been in use about a year; that witness was blowing his horn and traveling with his engine extinguished, in second, and heard no warning from the other; that the Studebaker is a more powerful car than the Dodge; that witness insisted that the cars should remain as they stood and went to Quebradillas after a policeman; that to the left of the road there were piles of broken stone at a distance of nine feet in front of the Studebaker; that witness does not know whether the policeman who took the measurement filed a complaint.

Augusto Font, who was in the car driven by Fernández, testifies that they were going down grade around the curve continuously sounding the horn; that witness heard no warning from the other machine but saw it when it was upon them; that the other car driven by the defendant was traveling on the left-hand side of the road; that witness was on the rear seat on the right, next to the mountain, and was thrown out on that side through the door, which came open.

Telesforo Cabán, another passenger in the Dodge, says that on taking the curve another automobile, traveling on the left-hand side of the road, driven by defendant, collided with them; that witness heard no warning from the other car; that the car in which witness was traveling was on the right-hand side of the road, going slowly and blowing the horn; that the two machines clung together and that of Arrieta dragged the other toward the center of the road, bringing it to a stop two short paces from the gutter.

Andrés B. Crosas, owner of the Dodge and also a passenger, states that before turning the curve his chauffeur blew the horn; that they were going at a reduced speed and keeping to the right next to the bank when they suddenly met the other car, which collided with them without warning;

that the other car was on the left-hand side of the road within the curve, which was sharp, and that the front wheel of the other car struck the bumper of witness' car about a fourth of the distance from the point where it was attached to the spring, the two cars remaining in contact.

The evidence for the defense consisted in the testimony of Ramón Arrieta to the effect that he was traveling up grade, with stone piles and a precipice on his right, keeping to his right and sounding the klaxon; that Fernández was traveling faster down grade; that witness was going uphill on second because his car was doing badly and Fernández lost his head when they met; that witness was traveling close to the piles of stone, applied the brake and stopped his car in front of the broken stone; that Fernández lost his head, turned to the left and Font was thrown out to the right of the car and fell some two meters in front thereof; that if the other car had gone to the right it would have brought up against the mountain side and not in the road; that Ramón Arrieta, a cousin of witness, his wife and a sister-in-law, who received a wound in the left side, were in the car with witness; that witness saw a policeman who arrived in a coach (Fernández having gone to get him), who made an investigation and a favorable report; that when the policeman arrived witness' car was in front of the stone pile, close up, having stopped "at a span" from the stone; that it was Crosas who sent for the policeman.

Appellant quotes from David's Law of Motor Vehicles, sections 94 and 95, which read as follows:

"94. A person operating an automobile and a person lawfully using the highway in another manner ordinarily have equal rights thereon, and it is the duty of each to exercise his right with due regard to the right of the other. The legal measure of duty is the same upon both of the parties.

"95. Reasonable care to avoid accident must be exercised both by the operators of motor vehicles and by others on the highways, and each has a right to assume that the other will discharge this

duty.  The operator of an automobile has the right to assume and act upon the assumption that every person whom he meets will exercise ordinary care and caution according to the circumstances, and will not negligently or recklessly expose himself to danger, but rather make an attempt to avoid it.  And persons who are lawfully in the street or highway are not bound to anticipate negligence on the part of drivers of automobiles that may entail injury upon them.''

This apparently is quoted as bearing on the right of defendant and the duty of Fernández, but it is equally applicable to the right of Fernández and the duty of defendant.  And it is the conduct of defendant, not that of Fernández, with which we are primarily concerned.

The same author says that ''in the operation of motor vehicles drivers must obey the 'law of the road.' ''   (§100.)  And continuing a discussion of ''the rules of the road'': ''A violation of these requirements, according to the rule recognized by the weight of authority, is negligence.  If a collision takes place and it appears that one of the parties was on the wrong side of the road, the presumption is generally against such party.''   (§104.)

Again, ''the drivers of motor vehicles owe a duty to each other to obey the rules of the road, and they are held to a stricter obedience, it seems, than drivers of lighter and slower moving vehicles.''   (§170.)

The question in the case at bar, however, as we have already intimated, is not whether or not the negligence of the defendant was the proximate cause of the collision, or whether or not Luis Fernández was guilty of contributory negligence, but purely and simply whether or not the defendant at the time in question, on rounding the curve, took the left-hand side of the road and neglected to sound his horn in open violation of the plain statutory provision above quoted.  The testimony on this point was conflicting, as indicated by the above outline, and we cannot say that the trial court erred in accepting the testimony of the witnesses for the prosecution rather than the uncorroborated state-

ment of the defendant as constituting the true version of the incident.

Appellant cites no authority in support of his second assignment beyond a vague allusion to the Law of Evidence and apparently does not rely with any large degree of confidence on this point. Section 102 of the Law of Evidence, enumerating certain disputable presumptions, mentions the following:

(5) That evidence wilfully suppressed would be adverse if produced.

(6) That higher evidence would be adverse from inferior being produced.

"The failure to bring before the tribunal some circumstance, document or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party. These inferences, to be sure, cannot fairly be made except upon certain conditions; and they are also open always to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure. But the propriety of such an inference in general is not doubted. The non-production of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause." Wigmore on Evidence, § 285.

"There remains some uncertainty in the judicial treatment of certain conditions preliminary to the inference. It is plain that the inference is based, not on the bare fact that a particular person is not produced as a witness, but on his non-production when it would be natural to suppose that he would have been produced if the facts known by him had been favorable." *Idem*, § 286.

"It seems plain that possible witnesses whose testimony is for any reason comparatively unimportant, or cumulative, or inferior to what is already utilized, might well be dispensed with by a party on general grounds of expense and inconvenience, without any apprehension as to the tenor of their testimony. In other words, put somewhat more strongly, there is a general limitation (depending for its application on the facts of each case) that the inference can-

not fairly be drawn except from the non-production of witnesses whose testimony would be superior in respect to the fact to be proved. This limitation should not be enforced with any strictness; otherwise it would become practically objectionable; but on principle it is sound, and has often been recognized.'' *Idem,* § 287.

In the case at bar the witness Fernández refers to the mark made by the skidding of the car and fixes the distance apparently measured by the policeman between the front of the Studebaker and the stone pile. The bent or broken bumper was produced at the trial and several witnesses described more or less in detail the physical situation. The policeman was not an eye-witness to what actually occurred and could only have testified to the physical facts as observed by him on his arrival. In so far as the record discloses, his testimony would have been merely cumulative and in any event he could have testified to nothing that was not apparently within the knowledge of other persons present at the time who did appear at the trial. In the circumstances it is not at all clear either that his testimony would have constituted ''higher evidence'' than that actually adduced or that the same was ''wilfully suppressed'' by the *Fiscal.*

But unless we are to assume that the court below took some such view of the matter, there is nothing in the record to show that the defendant did not receive the full benefit of the presumption that the testimony of the policeman, if adduced, would have been adverse to the prosecution. And, however this may be, we have outlined enough of the testimony to show that if the trial judge was inclined to believe, as evidently he did believe, the witnesses for the Government, then the indulgence of such presumption without more could hardly have affected the result.

The judgment appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.